UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JAMES CRAIG JENKINS, JR.,**

**v.**                                         **Case No. 8:14-CV-2501-T-33MAP**
                                                         **8:12-CR-84-T-33MAP**
**UNITED STATES OF AMERICA**
_____/

## O R D E R

Before the Court are Petitioner's Motion under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person
in Federal Custody (Cv-D-1, Cr-D-167), the United States'
Motion to Dismiss Jenkins' Motion to Vacate, Set Aside, or
Correct Sentence Pursuant to 28 U.S.C. § 2255 (Cv-D-6), and
Petitioner's reply (Cv-D-7).

Petitioner and his co-defendant, Christopher Carlton,
were charged in an Indictment with conspiracy to possess with
the intent to distribute five kilograms or more of cocaine.
Petitioner's family retained attorney Mark O'Brien to
represent him. Carlton pled guilty. Petitioner proceeded to
trial.

During his opening statement, attorney O'Brien conceded
that Petitioner was guilty of conspiracy to possess with
intent to distribute cocaine, but argued that Petitioner
intended to purchase only two kilograms. In its case-in-

chief, the Government presented testimony as to how Petitioner became under investigation.  Specifically, Task Force Officer ("TFO") James Emmerson testified that a cooperating source, Lalo Garza, identified Petitioner as someone he had sold cocaine to over the past two and two and a half years.

TFO Emmerson explained that law enforcement recorded numerous calls between the CS and Petitioner starting in November 2011.  TFO Emmerson explained that in December 2011 Petitioner met with "Flaco" of the Gulf Cartel, in Matamoros, Mexico, to discuss Petitioner purchasing large quantities of cocaine from the Cartel.   TFO Emmerson testified that on February 9, 2012, he acted as a go-between between the CS and Petitioner.   The Government introduced audio recordings of eight telephone calls between Emmerson and Petitioner negotiating the deal on that day.   The Government also presented video and audio recording of Petitioner cutting into a brick of cocaine.

Co-defendant Carlton testified that he acted as a paid driver for Petitioner for approximately 18 months to two years.  He explained that he and Petitioner "sold some drugs together."  Prior to the offense in this case, their drug deals involved ounces to a kilogram amount.  He testified that

on February 9, 2012, Petitioner told him it was supposed to be a big transaction so Carlton assumed it would be more than a kilogram.

Carlton explained that Petitioner was to pay him $1,500 for driving that day.  Carlton testified Petitioner met another man and got a bag from him and then put it in Carlton's truck.  Carlton then drove Petitioner to Westshore Mall.  According to Carlton, Petitioner took the bag and showed it to the agent.  They then followed the agent to the hotel.  Petitioner and the agent went into the hotel while Carlton remained in his truck waiting for Jenkins.  Carlton was arrested while waiting.

DEA Special Agent Justin Duralia testified that, after his arrest, Petitioner told him he was supposed to pick up "two blocks."  According to Duralia, Petitioner said he had originally negotiated 12 kilograms but agreed to take seven. Petitioner told Duralia that a person named "Stick" provided the money for two kilograms and that Stick was going to sell the additional five kilograms on Petitioner's behalf.

On July 18, 2012, a jury found Petitioner guilty of conspiracy to possess five kilograms or more of cocaine.  The Court sentenced Petitioner to a term of imprisonment of 168

3

months.   Attorney Thomas Burns was appointed to represent Petitioner on appeal.   Petitioner challenged two evidentiary rulings and the sufficiency of the evidence.   The Eleventh Circuit found that this Court did not violate Petitioner's constitutional right to cross-examine TFO Emmerson and, further, did not abuse its discretion by admitting Emmerson's testimony that Petitioner met with leaders of the drug cartel. The Eleventh Circuit found that sufficient evidence supported Petitioner's conviction.   United States v. Jenkins, 562 Fed. Appx. 878 (11th Cir.) (per curiam).

Petitioner filed a motion for new trial based on newly discovered evidence and an alleged Giglio violation.   The Court denied the motion by order dated June 2, 2014.   The Court denied his motion for reconsideration.   Petitioner then filed a motion to dismiss based upon "manufactured jurisdiction" and "outrageous government conduct."   The Court found Petitioner's motion sought to challenge the validity of his conviction.   The Court gave Petitioner the option of having the Court recharacterize his motion as a § 2255 motion or withdrawing the motion.   Petitioner withdrew the motion.

Petitioner then filed the instant § 2255 motion alleging outrageous government conduct, the admission of inadmissible

hearsay testimony at trial by TFO Emmerson, and prosecutorial misconduct. He also claims ineffective assistance of counsel in failing to (1) file pretrial motions; (2) object to hearsay testimony at trial; (3) request a Sears and buyer/seller instructions; and (4) object to the role enhancement. The Court notes that while Petitioner lists these ineffective assistance of counsel claims in his motion and at the beginning of his memorandum of law, the almost entirety of Petitioner's memorandum attacks the sufficiency of the evidence at trial, the credibility of TFO Emmerson, the admission of hearsay testimony, and lack of jurisdiction due to entrapment.

The Government filed a motion to dismiss Petitioner's motion. The Government argues that, while Petitioner asserts ineffective assistance of counsel and prosecutorial misconduct, in the majority of his brief he appears to make the same arguments as those raised in his direct appeal. The Government argues that Petitioner's claims of insufficiency of the evidence, the credibility of TFO Emmerson and the limitation on his cross-examination by the Court at trial, and the improper admission of hearsay testimony have already been rejected on appeal. It argues that Petitioner's claim of

5

entrapment is procedurally barred.  Finally, it argues that Petitioner improperly attempts to use claims of ineffective assistance of counsel to refashion the same arguments he made on direct appeal, and that, in any event, he cannot show ineffective assistance of counsel.

Petitioner counters that he is not raising the same issues in his § 2255 motion as he raised on his direct appeal. He argues that the Court should grant his motion and dismiss the Indictment or at a minimum order a new trial.  The Court addresses Petitioner's claims below.

## I.   PETITIONER'S CLAIMS RELATING TO INSUFFICIENCY OF EVIDENCE, THE CREDIBILITY OF TFO EMMERSON, AND HEARSAY TESTIMONY

While not enumerated as claims in his motion, in his brief, Petitioner challenges the sufficiency of the evidence at trial and the credibility of TFO Emmerson.  He also argues that the Court improperly admitted hearsay testimony from TFO Emmerson regarding statements made by the confidential source. As the Government points out, Petitioner raised these claims on appeal.  The Eleventh Circuit rejected the arguments and affirmed Petitioner's conviction.  <u>Jenkins</u>, 562 Fed. Appx. at 879-80.

Petitioner may not relitigate the issues here.

Specifically, "[t]he district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citing United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981)). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Nyhuis, 211 F.3d at 1343 (citation omitted); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994) ("prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding"). As such, Petitioner is not entitled to relief as to these claims.

## II. PETITIONER'S CLAIMS OF OUTRAGEOUS GOVERNMENT CONDUCT AND PROSECUTORIAL MISCONDUCT

Petitioner next raises claims of outrageous government conduct and prosecutorial misconduct. He specifically argues that the Government: (1) entrapped him by initiating the sting and inducing the commission of the offense; (2) provided late discovery; (3) introduced perjured and hearsay testimony; (4) vouched for a witness; and (5) argued hearsay in closing. The Court addresses each claim in seriatim.

7

### A.   Entrapment

According to his memorandum, Petitioner seeks to dismiss the Indictment pursuant to Fed.R.Crim.P. 12. based upon alleged entrapment, and "outrageous government conduct."  He argues that law enforcement initiated the scheme and entrapped him.

Notably, Rule 12(b)(3) provides that "at *any time while the case is pending*, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.  Fed.R.Crim.P. 12(b)(3) (emphasis added).  Once a mandate has issued in the direct appeal, a case is no longer pending for purposes of Rule 12(b)(3).  United States v. Elso, 571 F.3d 1163, 1166 (11th Cir. 2009) (per curiam); accord United States v. Smith, 419 Fed. Appx. 954, 957 (11th Cir. 2011).  The Eleventh Circuit issued its mandate on May 9, 2014.  Petitioner filed his motion on October 2, 2014, after the close of the pendency of the case.  (D-167.)  As such, the Court lacks jurisdiction to consider his request to dismiss under Rule 12 (b)(3).

To the extent Petitioner seeks relief pursuant to § 2255, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the

8

defendant is barred from presenting that claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir.2004).  To overcome procedural bar, Petitioner must show cause for not raising the claim earlier and actual prejudice from the alleged error.  Id.  Alternatively, Petitioner must demonstrate that he is actually innocent of the crime of conviction.  Id. at 1234-35.[1]

As cause, Petitioner claims that his attorney was ineffective in failing to raise these claims.  However, Petitioner fails to show that the government involvement in the criminal scheme was "outrageous" in that it violated fundamental fairness such that it was "shocking to the universal sense of justice." United States v. Savage, 701 F.2d 867, 868 (11th Cir. 1983) (citation omitted). Nor has he shown that an entrapment defense was warranted or that the outcome of the trial would have been different had an entrapment defense been presented.

"Government-created reverse sting operations are recognized and useful methods of law enforcement investigation." United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998).  It is not outrageous conduct where the

_____

[1]  Petitioner does not claim he is actually innocent.

9

government merely presents a defendant with a routine criminal opportunity of which he was more than willing to take advantage.  Savage, 701 F.2d at 869.  Law enforcement's investigation in Petitioner's case neither violated fundamental fairness nor shocks the universal cause of justice.

The affirmative defense of entrapment requires: (1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant. United States v. Sistrunk, 622 F.3d 1328, 1333 (11th Cir.2010).  Petitioner fails to show he was not predisposed to deal in drugs.  The evidence presented by the Government at trial, including Carlton's testimony, the recorded phone calls and video recorded meeting, and Petitioner's post-Miranda confession, negate any claim of lack of predisposition on Petitioner's part. As such, Petitioner has failed to show prejudice, and the foregoing claims are procedurally barred.

**B.   Late Discovery**

Petitioner next claims outrageous government conduct and prosecutorial misconduct in that the Government provided discovery and Jencks documents three or four days before the start of trial.  The record shows that on July 5, 2012, the

Government provided attorney O'Brien with additional discovery, including 89 recorded phone calls between the confidential source and Petitioner, and 96 pages of DEA line sheet summary reports. (Cr-D-64, ¶5.) As a result, attorney O'Brien requested a continuance of the trial. (Cr-D-64.) The Government did not oppose the motion, and the Court granted a continuance of the trial. (Cr-D-68, 69.)

There is no evidence of a <u>Jencks</u> violation. Furthermore, the Government's late disclosure of some of the phone calls and reports did not prejudice Petitioner's substantial rights. As indicated, the Court granted a brief continuance of the trial to allow defense counsel to review the additional discovery. On July 16, 2012, the day of jury selection, attorney O'Brien announced that he was ready to proceed. (Cr-D-140, p. 5, l. 15-16.) As such, Petitioner is not entitled to relief as to these claims.

### C.   Inadmissible Hearsay and False Testimony

Petitioner next alleges outrageous government conduct and prosecutorial misconduct in that the prosecutor elicited inadmissible hearsay testimony and allowed false testimony at trial.

With regard to Petitioner's claim that the Government

11

introduced hearsay testimony, the Eleventh Circuit determined
that Emmerson's testimony was not hearsay.  <u>Jenkins</u>, 562 Fed.
Appx. 879-80.  As for his claim that the Government introduced
false testimony, Petitioner previously raised this claim in
his motion for new trial, and the Court previously rejected
the claim.

Specifically, in his motion for new trial, Petitioner
argued that TFO Emmerson falsely testified about the
confidential source knowing Petitioner for two years.
Petitioner claimed that the confidential source was
incarcerated during that two year period and therefore could
not have known the Petitioner.  The Court found in its June 2,
2014 Order denying Petitioner's motion for new trial that
Petitioner had not presented sufficient evidence to
demonstrate that TFO Emmerson testified falsely or that the
Government intentionally failed to correct the testimony.
(Cr-D-151.)  Petitioner later submitted evidence with his
motion for reconsideration that demonstrates that the
confidential source was not incarcerated as originally alleged
by Petitioner but was actually paroled in December 2006 and
remained free until October 28, 2011 when he was arrested for
possession with the intent to distribute methamphetamine.

(Cr-D-152.)  The Court found the evidence Petitioner submitted completely contradicted Petitioner's claim that the confidential source was incarcerated during the two year period he alleged to have known Petitioner.  (Cr-D-164.)

As the Court previously found in its June 2, 2014 and August 28, 2014 Orders, there is no evidence in the record to support Petitioner's allegation that Emmerson falsely testified at trial.  Nor is there evidence of record demonstrating that the Government knowingly used perjured testimony.  As such, Petitioner request for relief as to these claims is denied.

### D.  Prosecutor Vouched for TFO Emmerson

Petitioner next argues that the prosecutor vouched for TFO Emmerson.  (Cv-D-1-1, p. 8-9.)  Petitioner specifically points to the Government's statement during its closing argument that, "Task Force Emmerson, there was, I submit to you, no misconduct here."  (Cr-D-142, p. 142, l. 6-7.)

The Government did not bolster or vouch for the credibility of TFO Emmerson.  The Government simply made argument that Emmerson "played a role of someone who was working for a drug organization, delivering drugs, and there was a back and forth about how much money you're going to pay

for it upfront." (Id. at p. 142, l. 7-10.)  There was nothing inappropriate about the Government's argument.

### E. Prosecutor Argued Hearsay in Closing

Petitioner's final prosecutorial misconduct argument is based upon the Government allegedly arguing hearsay in its closing argument.  (Cv-D-1-1, p. 8, D-1, Exh. 1, p. 2, ¶ I.(b)(3).)  The Court has reviewed the portions of the Government's closing argument of which Petitioner complains and finds that they were not improper.  (Cr-D-142, p. 118.) As such, Petitioner is not entitled to relief as to this claim.

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner lists various claims of ineffective assistance of counsel of his motion and memorandum.  Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom.  Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an

"objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the

15

Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694. A petitioner must show a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

With the foregoing standard in mind, the Court addresses each of Petitioner's ineffective assistance claims.

16

## A.   Failure to File Pretrial Motions

While Petitioner asserts in his § 2255 motion ineffective assistance of counsel in failing to file pretrial motions, he does not address this claim in his brief.   In his reply memorandum, he claims his counsel advised him that there were not any pretrial motions he could file.   (Cv-D-7, p. 3.)

The Court notes that attorney O'Brien filed a motion for bond and two motions to continue the trial.   (Cr-D-11, 36, and 64.)   The second motion for a continuance was based upon the late provision of discovery by the Government.   Petitioner fails to point this Court to any other pretrial motions his counsel should have filed.   Vague, conclusory, or speculative allegations that lack factual substantiation are not sufficient to support an ineffective assistance of counsel claim.   Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

## B.   Failure to Object to Hearsay

Petitioner contends that his counsel was ineffective in failing to object to hearsay testimony.   Petitioner first points to TFO Emmerson's testimony that when he contacted Agent Duralia in Tampa, "I advised him of our investigation, how we came cross James Jenkins as a target, advising he was

17

purchasing kilograms of cocaine from a source that we had just signed up," and Agent Duralia's testimony that TFO Emmerson told him that "it was determined that there was a drug trafficking organization trafficking in multiple kilograms of cocaine and that the Defendant was a recipient of cocaine and had been for quite some time. (Cv-D-1-1, p. 8 citing Cr-D-141, p. 21, l. 10-12; Cv-D-1, Cv-D-1-1, p. 11 citing Cr-D-142, p. 40.) Petitioner fails to show any prejudice resulting from his attorney's failure to object to this testimony. The testimony was not offered for the truth of the matter asserted. TFO Emmerson and Agent Duralia merely explained how law enforcement came to investigate Petitioner. United States v. Churchwell, 465 Fed. Appx. 864, 865-66 (11th Cir. 2012).

Petitioner next argues that his counsel was ineffective in failing to object TFO Emmerson's testimony that the confidential source had fronted cocaine to Petitioner in the past and the portion of the Government's closing argument in which the prosecutor stated, "You also heard that the Defendant had a course of dealing with the confidential source where kilo amounts were fronted to him." (Cv-D-1-1, p. 2 citing Cr-D-141 p. 35, l. 9-11, and Cr-D-142, p. 118.)

Again, Petitioner has failed to show that there is a

18

reasonable probability that the outcome of the case would have been different had his counsel objected to the foregoing. The hearsay evidence regarding the confidential source fronting cocaine to Petitioner in the past is of little importance when compared to the weight of the evidence that Petitioner conspired Carlton and Stick to possess with intent to distribute cocaine on February 9, 2012.

**C.   Failure to Request <u>Sears</u>/Buyer-Seller Instructions**

Petitioner next claims his counsel was ineffective in failing to request a <u>Sears</u> and a buyer-seller instruction. (Cv-D-1, p. 7; Exh. 1, p. 2.)

A <u>Sears</u> instruction provides that a conspiracy requires at least two participants but that a government informer or agent cannot be a co-conspirator. <u>Sears v. United States</u>, 343 F.2d 139, 142 (5th Cir. 1965). While attorney O'Brien did not request such an instruction, Petitioner fails to show any prejudice resulting from his failure to do so. First of all, Petitioner's counsel in closing argument advised the jury that Petitioner could not conspire with the agents or the confidential source. O'Brien stated, "Remember, my client by law, okay, this is very important, my client by law cannot conspire with an agent, an undercover agent or someone working

with an agent.   So he can't conspired with Lalo because Lalo is working for the Government."   (Cr-D-142, p. 125, l. 16-20.) He continued, "Lalo Garza cannot be a co-conspirator.   Task Force Agent Emmerson, playing the role of this cartel drug dealer, cannot be a co-conspirator in this case.   Agent Duralia cannot be a co-conspirator."   (Id. at l. 21-24.)

Second, the Government did not argue that Petitioner conspired with Lalo Garza or the law enforcement officers or agents.   Rather, the Government argued that co-defendant Carlton and a person Petitioner identified as "Stick" were co-conspirators with Petitioner.   (Cr-D-142, p. 140, l. 3-16.) Third, attorney O'Brien conceded that Petitioner had conspired to possess with intent to distribute two kilograms of cocaine. (Cr-D-141, p. 11-14; D-142, p. 123.)

Finally, there was ample evidence that there were at least three individuals who were not government agents or informers during the conspiracy. Specifically, the Government presented evidence that Petitioner and his co-defendant Christopher Carlton conspired together with "Stick," who Petitioner claimed provided the money for two of the seven kilograms, to possess with the intent to distribute cocaine. Carlton testified that he was working for Petitioner and that

20

he knew Petitioner was going to buy cocaine on the day of their arrest.   Additionally, Petitioner confessed to Agent Duralia.   Thus, the conviction could not have been predicated on a conspiracy solely between Petitioner and a government agent or informer.

As for Petitioner's claim that attorney O'Brien should have requested a buyer-seller relationship instruction, Petitioner fails to show prejudice resulting from the failure to request such an instruction.   In <u>United States v. Lively</u>, 803 F.2d 1124 (11th Cir. 1986), the court found that while the trial court did not include the defendant's requested instruction relating to a simple buyer-seller relationship, the conspiracy instruction the trial court utilized "adequately and correctly covered" the defendant's requested instruction.   <u>Id.</u> at 1129.   The court explained that the instructions utilized, which conformed with the Eleventh Circuit Pattern Instructions for a drug conspiracy offense, "addressed the substance of the requested instruction: without a showing of knowledge, a single, isolated act by a defendant does not by itself constitute participation in a conspiracy." <u>Id.</u>   The court in <u>United States v. Qiang Van Nguyen</u>, 296 Fed. Appx. 779, 781 (11th Cir. 2008), similarly held that the

21

standard pattern jury instruction on the elements of conspiracy covered the substance of the buy-sell instruction, and, as such, the trial court did not error in failing to give a buyer-seller instruction.

At Petitioner's trial, similar to Lively and Qiang Van Nguyen, the Court recited the Eleventh Circuit pattern jury instruction for a drug conspiracy. (Cr-D-81, p. 11-12.) The instruction set forth the elements required for a conspiracy as follows: (1) two or more people in some way agree to try to accomplish a shared and unlawful plan; (2) the defendant knew of the unlawful purpose of the plan and willfully joined in it; and (3) the object of the plan was to possess with the intent to distribute cocaine as charged. (Id.) The instruction further provided that:

> But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. Also a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

(Id. at p. 12.) The pattern instruction adequately covered the substance of a buyer/seller instruction.

### D.   Failure to Object to Role Enhancement

Petitioner's final claim of ineffective counsel is that

22

his counsel failed to object at sentencing to the two-level
enhancement for a managerial role in the offense.

In the initial Presentence Investigation Report disclosed
to the parties in September 2012, Probation recommended a drug
quantity in excess of 50 kilograms, which resulted in a base
offense level of 38, as well as a two-level role enhancement,
for a total offense level of 40.  Attorney O'Brien objected to
the drug quantity and resulting base offense level and the
role enhancement recommended by Probation.  (See Cr-D-113, ¶
2.)  A position of the parties meeting was held to discuss the
objections.  (Id. at ¶3.)  When the new PSI was disclosed on
November 30, 2012, the amount of cocaine attributed to
Petitioner and the role enhancement remained unchanged.  (Id.
at ¶ 4.)  Petitioner then sought and was granted a continuance
of his sentencing so that the confidential source could be
transported from Texas to testify at Petitioner's sentencing.

Thereafter, a revised PSI dated February 6, 2013 provided
for a substantially lower base offense level of 32 based on
seven kilograms of cocaine as had been urged by attorney
O'Brien.  The role enhancement remained unchanged, however,
for a total offense level of 34.  At sentencing, attorney
O'Brien did not object to the role enhancement.  Petitioner

has not demonstrated prejudice as a result of his attorney's failure to object to the enhancement.

Section 3B1.1(c) provides for a two level increase if the defendant was an organizer, leader, manager, or supervisor. U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B 1.1(c) enhancement." United States v. Jiminez, 224 F.3d 1243, 1251 (11th Cir.2000). Factors to consider in determining whether the defendant qualifies for the section 3B 1.1(c) role enhancement include (1) the exercise of decision-making authority; (2) the nature of participation; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4).

The evidence at trial supported the enhancement. Specifically, co-defendant Carlton testified that he worked for Petitioner as his driver for eight to nine cocaine transactions and was working for Petitioner on the day of their arrest. Carlton testified that Petitioner paid him for

his services.   Given the evidence, any objection to the role enhancement would have been meritless.

## IV.  EVIDENTIARY HEARING

Petitioner has failed to demonstrate the need for an evidentiary hearing.   The Court need not conduct an evidentiary hearing where it is evident from the record that the petitioner was not denied effective assistance of counsel. Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991). Based on the foregoing analysis, the Court does not find that an evidentiary hearing is warranted.

IT IS ORDERED that:

(1)  The United States' Motion to Dismiss Jenkins' Motion to Vacate, Set Aside or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Cv-D-6) is GRANTED.

(2)  Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Cv-D-1, Cr-D-167) is DISMISSED.

(3)  The Clerk is directed to enter judgment in favor of the Government and CLOSE this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue  … only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'"  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of

appealability, he is not entitled to appeal in <u>forma</u> <u>pauperis</u>.

DONE AND ORDERED at Tampa, Florida this 23rd day of February, 2015.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE

27